IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CLIFFORD ARMSTRONG,
    Plaintiff,

vs.                                    Case No.: 3:18cv2361/MCR/EMT

PENSACOLA POLICE DEPARTMENT, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Clifford Armstrong, an inmate of the Walton County Jail proceeding pro se and in forma pauperis, commenced this case by filing a civil rights complaint under 42 U.S.C. ¶ 1983 (ECF No. 1). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Upon review of Plaintiff's Complaint, the undersigned recommends that this case be dismissed as frivolous and for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

I.    BACKGROUND

Plaintiff names six Defendants in this case: (1) Craig Ammons, Captain of Pensacola Fire and Rescue; (2) Charles Burney, Chief of Defuniak Springs Fire Department; (3) Michael A. Adkinson, Jr., Sheriff of Walton County; (4) Tommie

Lyter, Chief of Pensacola Police Department ("PPD"); (5) Lorenza Armstrong, a fireman with Mobile Fire and Rescue in Mobile, Alabama; and (6) Selina Barnes, Commander of the Escambia County Jail (ECF No. 1 at 1–3).[1]

Plaintiff alleges he is facing criminal charges in Escambia County, but he is housed at the Walton County Jail (ECF No. 1 at 9). He alleges he has been in jail for five months (*id.* at 10). Plaintiff alleges "electromagnetic waves" are entering the Walton County Jail (*id.* at 7). Plaintiff alleges the waves are "going under my clothes on all my gentile [sic] parts" (*id.*). He alleges he began feeling the electromagnetic waves under his clothes and on his genitals when he was in Biloxi, Mississippi (*id.* at 9). Plaintiff alleges the waves cause him to have mental depression and "bad behaviors" (*id.*). Plaintiff alleges he informed Sheriff Adkinson and officers at the Walton County Jail, but officers advised him to report the information to medical staff and psychological professionals (*id.* at 7, 9–10). Plaintiff alleges he has been seen by several doctors (*id.* at 10). He alleges he does not take "mental medication" (*id.*). Plaintiff alleges the Pensacola Fire Department is aware of the electromagnetic waves, has "the equipment" inside the Walton County Jail, and "work hand and [sic] hand with the people doing this" (*id.* at 7).

---

[1] The court refers to the page number automatically assigned by the court's electronic filing system, rather than the page numbers of the original document.

Case No.: 3:18cv2361/MCR/EMT

Plaintiff alleges the Defuniak Springs Fire Department also knows about the electromagnetic waves (*id.*).

Plaintiff alleges he was housed in the Escambia County Jail from June to November of 2017, and again in 2018 (ECF No. 1 at 8). He alleges while he was in the jail, "I had this stuff put all over my body" (*id.*). Plaintiff alleges he was seen by a "mental doctor," and she told him he did not have a mental problem (*id.* at 8).

Plaintiff also alleges he hears voices (ECF No. 1 at 7–10). He alleges one particular voice is that of Defendant Lorenza Armstrong, a fireman in Mobile, Alabama (*id.* at 8). Plaintiff alleges he heard Defendant Armstrong's voice telling him that people were trying to kill him (*id.*). Plaintiff alleges he heard Armstrong's voice when he (Plaintiff) was in Alabama, Georgia, Florida, and Mississippi (*id.* at 8–9). Plaintiff alleges he still hears Armstrong's voice and the voices of a lot of people, including females (*id.* at 9). Plaintiff alleges he heard people say they were going to "mess with me with that stuff, until did [sic] something wrong, so they can kept [sic] this signal on me" (*id.* at 10).

Plaintiff alleges he contacted the Pensacola Police Department several times and reported that the firemen and undercover officers were "doing things" to him (ECF No. 1 at 8–9). Plaintiff alleges he reported this to 911 five times, and police responded to his location (*id.*). Plaintiff alleges the officers handcuffed him and transported him to a mental hospital for involuntary examination, pursuant to

Florida's Baker Act (*id.*).² Plaintiff alleges the officers reported that he stated he was going to hurt himself and somebody else, but he did not say he was going to hurt himself (*id.*).

Plaintiff alleges the government is "letting this go on" (ECF No. 1 at 9). He alleges he reported this to the FBI, but nothing has been done (*id.*).

Plaintiff asserts the following claims, which are repeated verbatim from the Complaint:

> (1) Government controls without my permission they have put on me. When I think or when I talk something is done to me.
> (2) When in Jail custody being punish by somebody else. Told them several times.
> (3) False statement on Baker's Act report.
> (4) Told law officers about it. Nothing was done about.
> (5) Fill like this stuff going on different parts of my body.

---

² The Baker Act provides that a person may be taken to a facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:

(a)   1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or

   2. The person is unable to determine for himself or herself whether examination is necessary; and

(b)   1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or

   2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.

Fla. Stat. § 394.463(1).

(ECF No. 1 at 11).  As relief, Plaintiff requests that the "government controls" be removed from him, and that he be told "who have been doing this to me" (*id.*). Plaintiff also requests punitive damages (*id.*).

II.     DISCUSSION

Rule 8(a)(2) requires that a plaintiff's claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8.  The Supreme Court has explained that a claim for relief must contain sufficient factual allegations to cross "the line between possibility and plausibility." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  That is, although the district court is bound to "accept as true all of the allegations contained in a complaint," this is limited by the rule that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Related to this is the rule that a district court has the inherent power to dismiss an action that is "so patently lacking in merit as to be frivolous."  Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 526 & n.3 (11th Cir. 1983). It is important to keep frivolity distinct from mere improbability.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable [.]"  Twombly, 550 U.S. at 556.  However, improbability tips into frivolity where the "allegations . . . are sufficiently fantastic to defy reality as

we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." Iqbal, 556 U.S. at 696 (Souter, J., dissenting); *see also* Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (frivolous claims include those describing "fantastic or delusional scenarios.")

The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013).

Here, Plaintiff's fantastical allegations of governmental monitoring and control of his mind and body through electromagnetic waves are far beyond mere improbability. While there are no little green men or time machines in Plaintiff's complaint, it is fantastic enough to be "halted at the starting gate by the district court." Guthrie v. U.S. Government, 618 F. App'x 612, 617 (11th Cir. 2015) (district court did not abuse its discretion in dismissing as frivolous action brought by former prisoner against thirty-five defendants, alleging that government and others, *inter alia*, pressured him to plead guilty to copyright infringement, monitored him through

surveillance equipment, put bacteria in his ear causing him to become infected, and killed his pet parrot) (unpublished but recognized as persuasive authority).

The only claim which does not qualify as obviously frivolous is Plaintiff's claim, "False statement on Baker's Act report" (ECF No. 1 at 11). Plaintiff alleges officers from the Pensacola Police Department transported him to a mental hospital for involuntary examination, and falsely reported that he stated he was going to hurt himself and another, even though he did not say he was going to hurt himself (*id.* at 9).

The Fourth Amendment protects people from unreasonable searches and seizures. *See* Roberts v. Spielman, 643 F.3d 899, 905 (11th Cir. 2011). "For Fourth Amendment purposes, a seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "An encounter between a police officer and a citizen becomes a seizure when 'a reasonable person would not feel free to terminate the encounter.'" *Id.* (quoting United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011)). In the context of a mental-health seizure, "[w]hen an officer stops an individual to ascertain that person's mental state (rather than to investigate suspected criminal activity), the Fourth Amendment requires the officer to have probable cause to believe the person is dangerous either to himself or to others." *Id.* (citations omitted).

Here, Plaintiff does not allege that any named Defendant participated in the involuntary hospitalization. Plaintiff names the Chief of PPD as a Defendant, but government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See* Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). "Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Under Iqbal, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, 556 U.S. at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Keating, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official

acted with the same mental state required to establish a constitutional violation against his subordinate.  *See* Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013).

Here, Plaintiff does not allege any facts suggesting that Chief Lyter personally participated in Plaintiff's involuntary hospitalization, nor does Plaintiff allege any facts suggesting a causal connection between actions of Chief Lyter and Plaintiff's hospitalization.  Furthermore, even if Plaintiff named the committing officer(s) as Defendant(s), Plaintiff's factual allegations fail to state a plausible claim for relief. Although Plaintiff alleges the officers falsely reported that he stated he was going to hurt himself, Plaintiff does not deny that he stated he was going to hurt someone else.  This statement provided probable cause to believe that the elements for Plaintiff's involuntary hospitalization were satisfied (*see supra* n.2).  Plaintiff's allegations fail to state a plausible Fourth Amendment challenge to his Baker Act commitment.[3]

---

[3] Plaintiff's Complaint also includes an allegation that the "jail report" includes a false statement (ECF No. 1 at 10).  Plaintiff alleges:

> Was said [sic] I was issue [sic] ticket.  Ticket was put in my motion of discovery.
> Did not write ticket on scene.

(ECF No. 1 at 10).  According to the public records of the Escambia County Clerk of Court, Plaintiff was charged with a noncriminal traffic infraction in Case No. 2018-TR-020598, for violating Florida's bicycle regulations, Florida Statutes § 316.2065.  The traffic citation was filed in state court on July 20, 2018.  The public records additionally show that prior to that, on July 8, 2018, Plaintiff was arrested for possession of cocaine, possession of marijuana, and possession of drug equipment. in Case No. 2018-CF-003811.  Those charges are the basis for Plaintiff's current detention.  Plaintiff does not assert a false arrest claim in his Complaint, nor does he claim that his arrest was not supported by probable cause (*see* ECF No. 1 at 11).  Although the court liberally construes pleadings filed by pro se litigants, the court will not serve as their de facto counsel by

Accordingly, it is respectfully **RECOMMENDED**:

1.  That this action be **DISMISSED** without prejudice as frivolous and for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(b)(i)–(ii).

2.  That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 15th day of March 2019.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY
CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

inferring claims from random facts sprinkled in a pleading.  If Plaintiff wishes to bring a false arrest claim, he may do so in a separate civil rights case.

Case No.:  3:18cv2361/MCR/EMT